**FEE PAID**

FILED

1  Julian Brew (SBN 150615)
   julian@cypressllp.com
2  Jared L. Watkins (SBN 300393)
   jared@cypressllp.com
3  **CYPRESS LLP**
4  11111 Santa Monica Boulevard, Suite 500
5  Los Angeles, CA 90025
6  Telephone:   424-901-0123
   Facsimile:   424-750-5100
7
8  Attorneys for Plaintiff-Relator,
   **RELATOR LLC**
9

2023 JUL 20  PM 3: 26

CLERK U S DISTRICT COURT
CENTRAL DIST OF CAL
LOS ANGELES
BY:              **rsm**

10              **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**
12

13  **UNITED STATES OF AMERICA,**     Case No.  **2:23-cv-05887-SPG-SSCx**

14          Plaintiff,

15  *ex rel.* **RELATOR LLC**, a California     **COMPLAINT FOR VIOLATIONS**
16  limited liability company,                **OF FEDERAL FALSE CLAIMS**
                                              **ACT**
17          Relator,
                                              **FILED *IN CAMERA* UNDER SEAL**
18      v.                                    **PURSUANT TO 31 U.S.C. §**
19                                            **3730(b)(2)**
20  **JEFF TENNYSON,** an individual;
21  **JOSHUA WOODWARD,** an individual;     **DO NOT PLACE ON PACER**
22  and **LIMA ONE CAPITAL, LLC,** a
    Georgia corporation; and DOES 1-10;     **JURY TRIAL DEMANDED**
23
24          Defendants.
25
26
27
28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

COMPLAINT

1    Plaintiff RELATOR LLC ( "Plaintiff") complains of **Jeff Tennyson**

2    ("Tennyson"), an individual, **Joshua Woodward** ("Woodward"), an individual,

3    **LIMA ONE CAPITAL, LLC** ("LOC"), a Georgia corporation, and DOES 1-10

4    (collectively "Defendants").

5                              **JURISDICTION & VENUE**

6        1.    This Court has subject matter jurisdiction over the Plaintiff's claims

7    brought under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3279, et seq.,

8    pursuant to 31 U.S.C. §§ 3730 and 3732.

9        2.    This Court has personal jurisdiction over Defendants pursuant to 31

10    U.S.C. § 3732(a) because at all times material hereto, Defendants transacted

11    business and are located in the Central District of California, and acts proscribed by

12    31 U.S.C. § 3729 occurred in this district.[1]

13        3.    Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and

14    under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendants' acts that form the

15    basis of this Complaint occurred in the Central District of California. Plaintiff the

16    United States is also located in the Central District of California.

17        4.    Relator's claims and this Complaint are not based on any prior public

18    disclosures of the fraud or transactions in a criminal, civil, or administrative hearing

19    in which the Government or its agent is a party, a congressional, Government

20    Accountability Office, or other federal report, hearing, audit, or investigation; or

21    from the news media. To the extent that there was any public disclosure unknown

22    to Relator, it is the "original source" within the meaning of 31 U.S.C.

23    § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily

24    providing this information to the United States Government prior to filing this *qui*

25    *tam* action.

26

27

28    [1] LOC operates throughout California, and has a headquarters in Irvine, California,
within the Central District of California.

COMPLAINT

1

**INTRODUCTION AND SUMMARY**

2      5.      In this matter, a mortgage lender used his lending business to

3  misappropriate millions of dollars from the US Federal government's Paycheck

4  Protection Program ("PPP"). To obtain the loan, the Defendants presented falsified

5  loan documents to the SBA. Defendants did not have any economic need for the

6  loan, they simply took advantage. In fact, Tennyson's lending business was

7  booming. Defendants had no economic need for payroll assistance, assuming the

8  loan was used on payroll. Defendants falsified additional documents that they

9  presented to the government to obtain total loan forgiveness, billing millions to the

10  US taxpayer.

11      6.      Tennyson used his mortgage lending business, LOC, to apply for and

12  receive a PPP loan totaling **$2,274,100.00**, purportedly to cover payroll costs.

13  Defendants:

14          a.  Falsified loan eligibility;

15          b.  Falsified the use of the loans on authorized expenses;

16          d.  Falsified the economic necessity for the loans; and

17          e.  Falsified the need for loan forgiveness.

18      7.      <u>Obvious Regulations Regarding Money Lenders</u>. LOC was ineligible

19  to obtain the PPP loan because it is a <u>money lending</u> business. Although most

20  American industries are allowed to take a PPP loan, a very few select industries are

21  not allowed. One such type of business is money lenders. The rationale is that

22  money lenders have sources of capital available to them to support their payroll

23  costs.

24      8.      <u>No Economic Necessity and Mortgage-Backed-Securities (MBS)</u>. The

25  PPP was made to help struggling businesses pay their workers. It is not a free

26  excuse to raid government coffers by wealthy and cunning businessmen. LOC did

27  not need the loans – there was no "need" or "economic necessity" to pay

28

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles, California 90025
(424) 901-0123

2

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles, California 90025
(424) 901-0123

1  Defendant's payroll expenses.[2] LOC did not and cannot show any decline in
2  revenue during the pandemic. In fact, during this time period mortgage lenders
3  experienced record profits. This is because of the housing price increases and
4  housing crisis. It is also because of the Federal government's policy to purchase
5  Mortgage Backed-Securities (MBS), which provided mortgage lenders like LOC a
6  steady source of high income.[3]

7      9.      Indeed, LOC was highly profitable when they took the loan in 2020.
8  They were also highly profitable in 2021 when they asked for loan forgiveness.
9  LOC currently has upwards of $45.5 million in annual revenue. To achieve this
10  current level of revenue, LOC required large capital sources in 2020 to make the
11  many millions of dollars in loans from which it is now reaping interest income. In
12  other words, LOC had the money to pay their own payroll when they applied for
13  the PPP loan. At the time of the loan, LOC had hundreds of millions of dollars in
14  capital. Yet Defendant falsely certified it had "economic uncertainty" so it could
15  take financial assistance from the US taxpayer.

16      10.     Tennyson was proud to announce that LOC was named to
17  Inc. Magazine's top 100 fastest growing veteran founded companies in America,
18  the VET100 in 2019. Furthermore, on April 7, 2021, Tennyson announced that
19  LOC was proud to celebrate $3 billion in total loan funding, which included a
20  record-breaking month of loan originations.

---

[2] LOC is not a small business in dire financial straits, but rather a well-financed
finance company. Public information shows their revenue was not declining, and
their own statements indicate massive growth and profits. Defendant cannot show
"economic necessity" in needing the loans to continue business operations.

[3] Agency MBS purchases are issued by the Federal government. The US Federal
Reserve has a $1.25 trillion program to purchase mortgages which was restarted on
March 15, 2020 as a result of the COVID-19 crises. This program provided
mortgage lenders with a guaranteed way to sell their mortgage assets. Mortgage
lenders like Defendant benefited greatly from this program.

11.    Between December 2019 and July 2021, the same time period of the loan, LOC actually expanded its business. This included plans to open two new branches in Idaho and Hawaii.

12.    Direct "Portfolio" Lending. As a direct portfolio lender specializing in home mortgage loans, LOC is a **money lender**. LOC was therefore ineligible to receive any SBA loans whatsoever. Furthermore, the SBA specifically stated that mortgage companies that make loans and *hold them in their portfolio* are not eligible. LOC confirmed that it does indeed hold them in its portfolio. Therefore, Defendant's certification was false because **it most definitely is the type of business/industry which is prohibited from SBA loans**.

13.    Defendant's Confirmation of Portfolio Aspect. Most mortgage lenders offer conventional conformed loans which conform to Freddie Mac and Fannie Mae guidelines and can be sold on the secondary market to government entities. However, some lenders offer portfolio loans which do not conform to these governmental guidelines and accordingly cannot be sold to government entities. These loans are typically held by the lender in a portfolio to collect interest and include Jumbo Loans, Bank Statement Loans, and other Non-Qualified Mortgage Loans. LOC is a direct portfolio lender that provides these portfolio money loans to consumers for mortgages. LOC confirmed that it is a portfolio lender, retains all loans in a portfolio, and does not sell its loans after closing. Additionally, LOC is well known in the lending industry as a corporation that specializes in portfolio lending, including recognition as a top five portfolio lender. Furthermore, LOC's website showcases various portfolio products and portfolio lending activity. Lastly, MFA's announcement that LOC retains $1.2 billion in a loan portfolio is an admission of their prohibited industry.

14.    Money Not Returned. The loan was taken by a business which was not allowed to take even one penny in loans, let alone millions of dollars. The **$2,274,100.00** in funds should never have been sought in the first place and should

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

4
COMPLAINT

1  have been returned immediately. Yet the Defendants went further by obtaining total

2  loan forgiveness, billing the US taxpayers millions of dollars. *Defendants have not*

3  *returned the loan proceeds.*

4      15.   <u>Further Falsification on Loan Forgiveness</u>. Defendants falsified further

5  documents to receive loan forgiveness. Defendants had to attest as to the use of the

6  funds and the amount used on authorized purposes. The loan could not have been

7  used on authorized purposes because LOC could not comply with the requirements

8  of forgiveness given its business type. So Defendants also lied on their forgiveness

9  documents and application.

10     16.   <u>Defendant's False Statements and Fraud</u>. Defendants knowingly and

11  intentionally made many materially false statements to the government and bank to

12  obtain the loans.

13     17.   Plaintiff brings this action as relator on behalf of the United States to

14  recover treble damages, civil penalties, and costs under the False Claims Act

15  ("FCA"), 31 U.S.C. §§ 3729-33. Plaintiff gave notice of its intent to file and full

16  disclosure of the evidentiary basis to the Department of Justice ("DOJ").

17                          **THE PARTIES**

18     18.   Plaintiff is a California limited liability company with its principal

19  place of business in Los Angeles, California.

20     19.   Defendant Tennyson is an individual and, at all relevant times herein,

21  is and was the Chief Executive Officer of LOC.

22     20.   Defendant Woodward is an individual and, at all relevant times herein,

23  is and was the Chief Financial Officer of LOC.

24     21.   Defendant LOC is a Georgia corporation formed in 1998 with its

25  second headquarters, 201 E McBee Avenue, Ste. 300, Greenville, South Carolina

26  29601.

27  / / /

28  / / /

CYPRESS LLP
11111 Santa Monica Boulevard Suite 600
Los Angeles, California 90025
(424) 901-0123

22.     LOC is a portfolio lender which directly provides rental portfolio loans, real estate loans, and money loans to people in return for an ownership interest in their homes.

23.     The true names and capacities, whether individual, partner, associate, corporate or otherwise, of Defendant DOES 1 through 10, inclusive, and each of them, are unknown to Plaintiff, who therefore sues said Defendant(s) by such fictitious names. Plaintiff is informed and believes and thereon alleges that each Defendant designated herein as a "DOE" is legally responsible in some manner for the events and happenings herein mentioned. Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of said DOES, and add appropriate charging allegations against said DOES when their identities have been ascertained. Plaintiff is informed and believes that each of the DOE Defendants were responsible in some manner for the injuries and damages alleged herein, and/or for the wrongful acts of some or all of the Defendants.

24.     Plaintiff is further informed and believes that each of the Defendants, whether specifically named or named as a DOE, was an agent, employee, servant and/or representative of each of the remaining Defendants, and, in doing or failing to do the things alleged herein, was acting within the course and scope of said agency, employment, service and/or representation.

25.     Plaintiff is further informed and believes that each of the Defendants, whether specifically named herein or named as a DOE, approved, ratified and/or acquiesced in the acts and omissions of each of the remaining Defendants.

26.     Plaintiff is further informed and believes that each of the Defendants herein, whether named as DOES or otherwise, acted in concert, agreement and conspiracy with the other Defendants for the common purpose of engaging in a scheme to defraud as alleged below.

/ / /

/ / /

## THE CARES ACT AND PAYCHECK PROTECTION PROGRAM

27.    On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for eligible individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

28.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and stay in business as a result of the devastating effect of the COVID-19 pandemic and resulting restrictions.

29.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

30.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) was enacted to provide additional funding and authority for the PPP. On June 5, 2020, the Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) was enacted, changing key provisions of the PPP, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

31.    Under the PPP, in 2020, eligible businesses could obtain one SBA guaranteed PPP loan. Businesses were required to spend all loan proceeds only for employee compensation, rent or mortgage, and certain other specified expenses. Depending on their use of the loan proceeds as certified, they could qualify for loan forgiveness, up to the full amount of the loan.

32.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, whether a "First Draw" or "Second Draw" loan, an eligible business (through its authorized representative)

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

had to sign and submit a PPP loan application (SBA Form 2483) online through the lender's platform. The PPP loan application (SBA Form 2483) required the business (through its representative) to acknowledge the PPP program rules and make certain certifications in order to be eligible to obtain the PPP loan, including certifying that their certifications were true.

33.   Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the lender, it funded the PPP loan with its own funds, which were 100% guaranteed by the SBA.

34.   After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan. For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | Yes | No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has | ☐ | ☐ |

| | | | |
|---|---|---|---|
| 1<br>2<br>3<br>4 | not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained the PPP borrower's False Statement.

35.    SBA Form 2483 includes the following certification, among others: "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (the "Understanding Certification").

36.    SBA Form 2483 also includes the following certification, among others: "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (the "Eligibility Certification").

37.    SBA Form 2483 also includes the following certification, among others: "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (the "Use of Proceeds Certification").

38.    SBA Form 2483 also includes the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (the "Economic Necessity Certification").

CYPRESS LLP<br>11111 Santa Monica Boulevard Suite 600<br>Los Angeles, California 90025<br>(424) 901-0123

39.    SBA Form 2483 also includes the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (the "Worker Retention and Payroll Certification").

40.    SBA Form 2483 also includes the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (the "Single Loan Certification").

41.    SBA Form 2483 also includes the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000" (the "No False Statements Certification").

42.    After the borrower submitted a PPP loan application, it was processed by the participating lender. If the PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lender and be responsible for its repayment.

43.     Under applicable SBA rules and guidance, recipients of PPP loans could apply to have principal and interest on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

44.     Loans could only be used for certain permitted expenses, such as to pay employees' salaries, employee benefits, mortgage interest, rent, utilities or worker protection costs related to COVID19.

45.     More specifically, the loan forgiveness application (SBA Form 3508), revised as of July 30, 2021, included the following certifications, among others:

    (1)     The dollar amount for which forgiveness is requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

- includes payroll costs equal to at least 60% of the forgiveness amount;

- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and

- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-

CYPRESS LLP
11111 Santa Monica Boulevard Suite 560
Los Angeles, California 90025
(424) 901-0123

11
COMPLAINT

1    employee or self-employed individual/general partner, capped at

2    $15,385 per individual.

3    (2)    I understand that if the funds were knowingly used for

4    unauthorized purposes, the federal government may pursue recovery of

5    loan amounts and/or civil or criminal fraud charges.

6    (3)    The Borrower has accurately verified the payments for the

7    eligible payroll and nonpayroll costs for which the Borrower is

8    requesting forgiveness.

9    (4)    The Borrower's eligibility for loan forgiveness will be evaluated

10    in accordance with the PPP regulations and guidance issued by SBA

11    through the date of this application.

12    46.    13 CFR § 120.110 provides a list of what type of business are

13    **ineligible** for SBA loans. This list includes lenders like LOC:

14    **"(b) Financial businesses primarily engaged in the business of lending,**

15    **such as banks, finance companies, and factors (pawn shops, although**

16    **engaged in lending, may qualify in some circumstances)"**

17    47.    On April 2, 2020, the SBA posted the First PPP Interim Final Rule

18    announcing the implementation of the CARES Act. SBA posted additional interim

19    final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an

20    interim final rule supplementing the previously posted interim final rules with

21    additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28,

22    2020 / Rules and Regulations at, 23450-52, available at

23    https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-

24    for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.COMMERCE.

25    This interim final rule supplemented previous regulations and guidance on several

26    important, discrete issues. The April 28, 2020, Interim Final Rule was immediately

27    effective without advance notice and public comment because section 1114 of the

28

12
COMPLAINT

CARES Act authorized SBA to issue regulations to implement Title I of the
CARES Act without regard to notice requirements. Id.

48.    With respect to the PPP, the January 6, 2021, Interim Final Rule
provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts
113, 120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR*
*120.110 eligible for a PPP loan?"*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP**
**loans. For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n)**
**is superseded by subsection B.2.a.iii. of this interim final rule. Otherwise,**
**a business is not eligible for a PPP loan if it is a type of business concern**
**(or would be, if the entity were a business concern) described in 13**
**C.F.R. 120.110, except as permitted by subsections B.1.d and B.1.g of**
**this rule or otherwise permitted by PPP rules. Businesses that are not**
**generally eligible for a 7(a) loan under 13 C.F.R. 120.110 are described**
**further in SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2,**
**Section A, Chapter 3.**

/ / /

/ / /

/ / /

COMPLAINT

1    49.    The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2,

2    Section A, Chapter 3 states as follows:

3    
### CHAPTER 3: INELIGIBLE BUSINESSES

4    **A. TYPES OF INELIGIBLE BUSINESSES**

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as
ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list
may be eligible under limited circumstances, as discussed below.

6    1.  Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may
be eligible). 13 CFR § 120.110 (a)

7    2.  Businesses Engaged in Lending 13 CFR § 120.110 (b).

8        a.  SBA cannot guarantee a loan that provides funds to businesses primarily engaged
in lending, investment, or to an otherwise eligible business engaged in financing,
factoring, or investment not related or essential to the business. This prohibits
SBA Loans to:

            i.  Banks;

            ii.  Life Insurance Companies (but not independent agents);

            iii.  Finance Companies;

            iv.  Factoring Companies;

            v.  Investment Companies;

            vi.  Bail Bond Companies; and

            vii.  Other businesses whose stock in trade is money.

        b.  The limited circumstances under which certain businesses engaged in lending
may be eligible are as follows:

            i.  A pawn shop that provides financing is eligible if more than 50% of its
revenue for the previous year was from the sale of merchandise rather than
from interest on loans.

            ii.  A business that provides financing in the regular course of its business (such
as a business that finances credit sales) is eligible, provided less than 50% of
its revenue is from financing its sales.

            iii.  A mortgage servicing company that disburses loans and sells them within 14
calendar days of loan closing is eligible. Mortgage companies primarily
engaged in the business of servicing loans are eligible. Mortgage companies
that make loans and hold them in their portfolio are not eligible.

            iv.  A check cashing business is eligible if it receives more than 50% of its
revenue from the service of cashing checks.

23    Effective October 1, 2020                                        Page 141

24    
## DEFENDANTS' FRAUD

25    50.    During round 1 of the paycheck protection program, Defendant LOC

26    applied for a PPP loan for **$2,274,100.00**. It was approved on April 10, 2020, by the

27    SBA for the full amount, which was disbursed. The loan was facilitated by Ameris

28    Bank. Defendant received 100% of the approved amount. On its application for this

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

1    loan, Defendant stated that it had 169 employees for which it needed the loan. This

2    loan was forgiven on July 27, 2021.

3         51.     LOC admits to being a direct portfolio lender on its website, through

4    its licensure and public statements about its products. LOC is expressly prohibited

5    from receiving SBA loans, including PPP loans. LOC's CEO, Tennyson, is a

6    sophisticated, experienced businessman. He knew about the restrictions. The legal

7    and financial experts he has hired over the years, would have known this. Tennyson

8    intentionally broke these clear rules knowing what he was doing. He has navigated

9    the highly regulated business of lending for decades since founding the company.

10    He has successfully expanded the mortgage company and would have had to

11    manage and investigate the many regulations encountered along the way. He would

12    have quickly discovered that these loans were not permitted, especially given the

13    amounts involved and the expertise and capabilities of the people working in his

14    company.

15         52.     In addition to complying with applicable business type ineligibility

16    rules, all borrowers should carefully review the required Economic Certainty

17    certification on the Borrower Application Form stating that ''[c]urrent economic

18    uncertainty makes this loan request necessary to support the ongoing operations of

19    the Applicant.''

20         53.     LOC abused the PPP program, from misrepresenting its economic

21    need for the loan to willfully ignoring its ineligibility, to maximizing the amount of

22    the loan and then obtaining loan forgiveness. Discovery will reveal where the

23    millions in PPP funds were actually spent, but what is obvious is that Defendants

24    *did not need any money from US taxpayers*. The business was lending other people

25    money. LOC is and was highly profitable, during the pandemic, just like most in

26    their industry. LOC did not suffer any business loss and certainly had the money to

27    pay their own worker wages. Their "stock in trade" is money and business was

28    booming.

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0123

15

54.     Defendants signed the loan applications, thereby endorsing the

Understanding Certification, which means that they agreed that they understood the

rules and guidelines of the PPP, including, without limitation the rules regarding

use of proceeds and the certifications made.

55.     The proceeds of the PPP Loans were not and could not have been used

only for authorized purposes consistent with the PPP Rule, because, among other

things, the Defendant was obviously not allowed to take PPP loans because of their

industry type - money lenders. Therefore, when Defendants made the Use of

Proceeds Certification, the certification was false.

56.     The proceeds of the PPP Loans were not necessary to support the

ongoing operations of LOC. The company's enjoyed record high business

achievements since 2020 until today. It has been widely reported that mortgage

lenders, like the Defendants' were highly profitable during the housing market price

increases and high demand in 2020 and 2021. This company had considerable

financial resources to pay its own workers, assuming that is where the money was

spent rather than into the pocket of the CEO and its executives. Therefore, when

Defendants made the Economic Necessity Certification, the certification was false.

57.     The PPP loan money was only allowed to be used on authorized

expenses. The proceeds of the PPP Loan were not permitted to be used to pay

business costs for a business in the lending industry, therefore when Defendant

made the Worker Retention and Payroll Certification, the certification was false.

58.     By virtue of the above false statements, when Defendants made the No

False Statements Certification, that certification was false.

59.     The Defendants actively pursued and obtained loan forgiveness.

Because LOC is prohibited from obtaining any PPP loans, its representation on its

forgiveness application that it spent 100% of the loan proceeds on eligible expenses

was not truthful. The SBA would not have forgiven the loans if they knew

Defendants' certifications described above were false.  They also would not have

CYPRESS LLP
11111 Santa Monica Boulevard Suite 500
Los Angeles, California 90025
(424) 901-0723

1    forgiven the loans if they knew the proceeds had been used to increase profits
2    instead of paying their employees.

3         60.    As a result of the forgiveness, Defendants have not repaid the loan
4    and have kept the proceeds, and the loan has been repaid with money from
5    taxpayers, including the small businesses and owners who were supposed to receive
6    the PPP funds instead of repaying a profitable mortgage lender's loan that it never
7    should have received, let alone had forgiven.

8    **THE FALSE CLAIMS ACT**

9         61.    The False Claims Act prohibits fraudulent conduct in connection with
10    federal programs, including the knowing submission of false claims for payment to
11    the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability
12    may attach if the omission renders those representations misleading. 41. 31 U.S.C.
13    § 3729(a)(1)(A) and (B) of the FCA provide that:

14              (1) . . . any person who —

15              (A) knowingly presents, or causes to be presented, a false or fraudulent
16    claim for payment or approval; [or]

17              (B) knowingly makes, uses, or causes to be made or used, a false
18    record or statement material to a false or fraudulent claim,

19              . . .

20              (G) knowingly makes, uses, or causes to be made or used, a false
21    record or statement material to an obligation to pay or transmit money or property
22    to the Government, or knowingly conceals or knowingly and improperly avoids or
23    decreases an obligation to pay or transmit money or property to the Government, is
24    liable to the United States Government . . .

25              31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

26              42. The scope of a false or fraudulent claim is to be broadly construed.
27    As used in the FCA, a "claim"

28

17
COMPLAINT

(A) means any request or demand, whether under a contract or
otherwise, for money or property and whether or not the United States has title to
the money or property, that—

    (i) is presented to an officer, employee, or agent of the United States;
or

    (ii) is made to a contractor, grantee, or other recipient, if the money or
property is to be spent or used on the Government's behalf or to advance a
Government program or interest, and if the United States Government—

    (I) provides or has provided any portion of the money or property
requested or demanded; or

    (II) will reimburse such contractor, grantee, or other recipient for any
portion of the money or property which is requested or demanded; . . .

    31 U.S.C. § 3729(b)(2) (2020).

62.    A person who violates the False Claims Act during the time period at
issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages
which the United States Government sustains because of the act of that person." 31
U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part
85, Civil Monetary Penalties Inflation Adjustments for 2022 published at:
https://www.govinfo.gov/content/pkg/FR-2022-05-09/COMMERCE/2022-
09928.COMMERCE.

## FIRST CAUSE OF ACTION

## FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729(a)(1)(A-B))

63.    Plaintiff alleges and incorporates by reference each and every
allegation contained in all prior paragraphs of this complaint.

64.    This is a claim for treble damages and penalties under the False Claims
Act, 31 U.S.C. § 3729, et seq., as amended.

65.    By virtue of the acts described above, Defendants knowingly
presented, or caused to be presented, to an officer or employee of the United States

government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A). Specifically, each of Defendants' Economic Necessity, No False Statements, Eligibility, Use of Proceeds, Understanding, Worker Retention and Payroll Certifications described above all were knowingly false, and relied upon by lenders and the SBA in approving the PPP Loans. Their request for forgiveness contained a further misrepresentation that the loans had been used only for authorized purposes.

66.   By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

67.   The Government and its agents and contractors relied on those false statements in approving and making the loans and subsequently forgiving them, leaving the burden of repayment on taxpayers.

68.   Because of the Defendants' acts, the United States sustained damages in an amount to be determined at trial and, therefore, is entitled to treble damages under the FCA, plus civil penalties of not less than $12,537.00 and not more than $25,076.00 for each and every violation arising from Defendants' unlawful conduct alleged herein, and attorneys' fees in an amount to be proven.

**CONCLUSION**

69.   Tennyson and his company abused the PPP. The PPP was meant for struggling businesses. Now that program is dry. The American people have a right to reconciliation.

/ / /

/ / /

/ / /

CYPRESS LLP
11111 Santa Monica Boulevard Suite 800
Los Angeles, California 90025
(424) 901-0723

**PRAYER FOR RELIEF**

WHEREFORE, qui tam Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 20, 2023                           CYPRESS LLP


                                    By:    /s/ Julian Brew
                                           JULIAN BREW
                                           JARED L. WATKINS
                                           Attorneys for Plaintiff-Relator
                                           RELATOR LLC

CYPRESS LLP
11111 Santa Monica Boulevard Suite 800
Los Angeles, California 90025
(424) 901-0123